ROTBERG et al. v. HEBRON.

(Supreme Court, Appellate Term, First Department.   March 13, 1916.)

1. DISMISSAL AND NONSUIT ⊚⇒75—DISMISSAL WITHOUT PREJUDICE.
   Where a case was tried on the merits, and both parties put in their entire proof, there was no ground for a dismissal "without prejudice."
   [Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. § 169; Dec. Dig. ⊚⇒75.]

2. STIPULATIONS ⊚⇒19—CONSTRUCTION—ENFORCEMENT AS CONTRACT.
   Where a mortgagee in foreclosure joined as defendant the sellers of fixtures under a conditional sale to the mortgagor, and authorized or ratified a stipulation between her attorney and the attorney for the conditional sellers that the mortgagee might enter judgment of foreclosure, and that before any money should be paid to her from the proceeds of the sale the conditional sellers should be paid their claim, whereupon they would deliver to the purchaser a bill of sale of the fixtures, and that an order to that effect might be entered, there was an enforceable contract against the mortgagee.
   [Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 55-63; Dec. Dig. ⊚⇒19.]

3. ATTORNEY AND CLIENT ⊚⇒86—AUTHORITY OF ATTORNEY—CONTRACT ON BEHALF OF CLIENT.
   In such action, the attorney for the mortgagee had no implied power to make such a stipulation, in effect a contract enforceable against the mortgagee.
   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 155-160; Dec. Dig. ⊚⇒86.]

4. ATTORNEY AND CLIENT ⊚⇒103—AUTHORITY OF ATTORNEY—CONTRACT ON BEHALF OF CLIENT—EVIDENCE.
   In such action, evidence *held* sufficient to show that the mortgagee either authorized or ratified the action of her attorney in making such stipulation or contract.
   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 154; Dec. Dig. ⊚⇒103.]

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. COSTS ⬡⟶77—PARTY ENTITLED—CLIENT.

Costs and allowances belong to the party, and not to the attorney, even though they may usually be paid to the attorney.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 330–334; Dec. Dig. ⬡⟶77.]

6 STIPULATIONS ⬡⟶19—ACTION TO ENFORCE—CONTRACT OF MORTGAGEE——COSTS.

Under a contract by the mortgagee, suing to foreclose, whereby it was agreed that he might enter judgment of foreclosure, and that, before any money should be paid to her from the proceeds of the sale, the conditional seller who had placed fixtures on the premises, should be paid the sum of $340, whereupon he would execute a bill of sale to the purchaser, followed by judgment reciting the stipulation, and providing that out of the proceeds the referee should pay the taxes, assessments, etc., then the costs and expenses of the sale, and then the lien of the mortgagee's former attorney, then the costs and allowances of the action, and then pay the $340, the mortgagee, who purchased for $800, out of which the referee paid the costs and expenses of the action, and the costs and allowances, amounting to $476, made up of $150 paid on the lien of the former attorney and $326 paid to the subsequent attorney, received money within the meaning of the contract out of which she was bound to pay the stipulated sum to the conditional seller, notwithstanding the form of the judgment, which was only intended to protect the rights of the parties.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 55–63; Dec. Dig. ⬡⟶19.]

7. MORTGAGES ⬡⟶565—FORECLOSURE—APPLICATION OF PROCEEDS OF SALE.

As between the mortgagee and the mortgagor, or owner of the equity of redemption, all the proceeds of the sale, after payment of costs and expenses, are to be applied on the mortgage debt.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1629; Dec. Dig. ⬡⟶565.]

Appeal from Municipal Court, Borough of Manhattan, Eighth District.

Action by Morris Rotberg and another against Mary Hebron. From a judgment dismissing the plaintiffs' complaint after trial, plaintiffs appeal. Reversed, and judgment directed for the plaintiffs.

Argued February term, 1916, before LEHMAN, WEEKS, and DELEHANTY, JJ.

Benjamin I. Shiverts, of New York City, for appellants.
Claude V. Pallister, of New York City, for respondent.

LEHMAN, J. The defendant herein, in the year 1914, brought an action to foreclose a mortgage on certain premises in Bronx county. The plaintiffs had previously installed in the premises chandeliers and fixtures under a conditional sale to the owner of the equity of redemption. Under the terms of the contract of sale it was agreed that the title to these fixtures should remain in the vendors until the sum of $340 was paid to them. This contract of sale was duly filed. When this defendant started her action in foreclosure she made these plaintiffs parties defendant. These plaintiffs thereupon served an answer, setting up their claim of title to the fixtures. Thereafter the attorneys for the parties entered into the following stipulation:

"It is hereby stipulated, consented, and. agreed by and between the plaintiff's attorney and the attorney for the defendants, Morris Rotberg and Michael Rosenbliett, doing business as copartners under the name of Rotberg & Rosenbliett, that the plaintiff may enter judgment of foreclosure and sale, with the understanding, however, that before any money shall be paid to the plaintiff herein from the proceeds of the sale of the real estate involved herein that the defendants Rotberg & Rosenbliett shall be paid the sum of $340, with interest from the 1st day of October, 1913, whereupon the defendants Rotberg & Rosenbliett will execute and deliver to the plaintiff, if the plaintiff is the purchaser at said foreclosure sale, or any person who may become the purchaser at said foreclosure sale, a bill of sale of the property mentioned in the answer of said defendants Rotberg & Rosenbliett, title to which is claimed by the defendants Rotberg & Rosenbliett, and which title shall not be affected until payment is made, and that an order to that effect may be entered forthwith, without costs."

Pursuant to that stipulation these plaintiffs withdrew their answer in the foreclosure suit, and in December this defendant, the plaintiff in that action, entered a judgment after an inquest. The judgment recites the stipulation, and provides that the referee shall sell the property, and out of the proceeds of the sale he shall pay the taxes, assessments, and water rents, and shall then pay the costs and expenses of the sale, shall then pay to L. J. Morrison, a former attorney of the plaintiffs in that action, such sum as may be certified by him by a referee appointed to determine his lien, shall then pay the costs and allowances of the action, and shall then pay to these plaintiffs the sum of $340, with interest from October 1, 1913. That judgment further provides that the referee shall then pay to the plaintiffs in that action the sum of $7,693, the amount found due on their mortgage, "after deducting such amounts as shall have been paid to L. J. Morrison and to Rotberg & Rosenbliett, or so much thereof as the purchase money of the mortgaged premises will pay of the same."

It appears that this defendant, the plaintiff in the foreclosure action, bought in the property for the sum of $800. Out of this sum the referee paid the costs and expenses of the action, the amount adjudged to L. J. Morrison, the former attorney of the foreclosing mortgagee, and to their then acting attorneys a part of the costs and allowances made to them. At the trial the defendant herein stipulated that payment of $476 for costs and allowances had been made. This item is apparently made up of the sum of $150 paid to L. J. Morrison and the sum of $326 paid to the substituted attorney. The amount received on the sale was, however, concededly insufficient to complete all the payments which under the terms of the judgment were to be made before the referee was directed to make any payment to these plaintiffs.

The plaintiffs have now brought this action for the sum of $340, with interest from October 1, 1913, claiming that the stipulation was, in effect, a contract on the part of the defendant to pay to them that sum out of any moneys received on the sale, that the defendant. has received the sum of $476 on that sale, and must now, out of that sum, pay to them the agreed amount. These facts were undisputed, and the only issue upon which there is an apparent conflict of testimony was the question whether the defendant ever authorized her attorney to make this stipulation or subsequently ratified it. At the close of,

the plaintiffs' case the trial justice reserved decision upon the motion to dismiss. The defendant then put in her testimony. Thereafter the trial justice rendered the following opinion:

"Complaint dismissed, on the ground that plaintiffs did not prove a prima facie case. Judgment for the defendant, after trial, without prejudice to a new action."

[1] A careful examination of the record fails to show any defect of proof that might be supplied hereafter, and the parties point out no such defect. The case was tried on the merits, and both parties put in their entire proof. I can therefore see no ground for a dismissal "without prejudice." It seems to me that, in spite of the fact that there is an apparent conflict of testimony on the one issue, the case presents merely questions of law.

[2] The first question presented is the correct construction of the "stipulation." It seems to me that that paper goes far beyond an ordinary stipulation made in a case, but constitutes, as these plaintiffs claim, a contract. It begins with the statement that "it is hereby stipulated, consented, *and agreed.*" It then provides for the entry of judgment, but with the "understanding" that these plaintiffs shall be paid the sum of $340, with interest, before this defendant should receive any moneys from the proceeds of the sale. If this defendant agreed that this proviso was her understanding, I fail to see how she can now contend that the paper does not constitute an enforceable contract on her part. Moreover, it is perfectly clear that some of the provisions of this paper could not and were not intended to be a part of the judgment, but were to be carried out after judgment.

[3, 4] Inasmuch, however, as this paper is really a contract, and not an ordinary stipulation, it follows that the attorney for the defendant had no implied power to make such a stipulation. The plaintiffs must therefore, as part of their case, show actual authority on the part of the attorney. For this purpose they called the defendant, and showed through her that she was represented by her husband in all transactions concerning these premises. They then called the attorney, who testified that, while his recollection on this point was not very clear, his best recollection was that he had told the defendant's husband about the matter before the stipulation was signed. This testimony on the part of the attorney was contradicted by the defendant's husband, but his own testimony shows ratification of his attorney's act after he learned of it. According to this testimony, new attorneys were substituted for the attorney who signed the stipulation shortly after the stipulation was signed. He learned of the stipulation shortly thereafter, but he took no steps to repudiate the stipulation, so that the answer of these plaintiffs might be restored. On the contrary, through his new attorneys, he took advantage of the benefits of the stipulation, and entered judgment after an inquest upon the withdrawal of the answer of these plaintiffs, made in pursuance of the stipulation. In fact, he affirmatively, through the attorneys, made use of the stipulation and entered judgment *upon* that stipulation, and even now claims that that judgment adjudicates the rights of the parties under the stipulation. It is clear, therefore, that the defendant, by her husband, either authorized or ratified the action of her attorney.

[5-7] The next question which we must consider is the question of whether the payment of costs and allowances to plaintiff's attorneys constitutes a receipt by her of moneys from the proceeds of the sale. It is too well established to require citation that costs and allowances belong to the party, and not to the attorney, even though they may usually be paid to the attorney. I think, therefore, that the defendant has received moneys, within the meaning of the contract or stipulation, out of which she was bound to pay the agreed sum to these plaintiffs. As a matter of fact the defendant does not attempt, on this appeal, to dispute the proposition as a general rule, but claims that in this case the rights of the parties are settled by the judgment itself, which postpones the payment to these plaintiffs till after the payment to his former attorney, Morrison, and the payment of costs and allowances.

In considering the effect of this judgment we must bear in mind two points: First, that the judgment was entered after an inquest; second, that this inquest followed upon the withdrawal of the answer of these plaintiffs under the stipulation, so that at the time the judgment was entered the parties had themselves agreed that there was no issue in the case upon which the court was called upon to adjudicate. While the judgment did attempt to provide for payment under the stipulation, these plaintiffs at that time had no standing in court and could not demand to be heard. Moreover, I do not think that the judgment attempts to pass upon their rights and to make the order of payment by the referee binding upon them. At that time the situation was peculiar. Morrison, the former attorney, had established a lien on any judgment which the plaintiff might recover. That lien was payable out of the judgment, including any costs or allowances to the plaintiff in that action, and the judgment was bound to make provision for the payment of this lien in that manner. On the other hand, the law establishes, as between the mortgagee and the mortgagor or owner of the equity of redemption, that *after the payment of costs* and expenses all the proceeds of the sale shall be applied on the mortgage debt.

The judgment in this case, I think, merely attempted to provide for priority of payment as fixed by the law. The claim of Morrison and the claim of the present plaintiffs were payable, as between themselves and the mortgagee, out of any proceeds received by the mortgagee, including costs. On the other hand, these claims did not in any way concern the mortgagor or owner of the equity of redemption, and they were entitled to have all payments *after* costs and expenses applied upon the mortgage indebtedness, while the mortgagee was entitled to her costs and allowances before any payments could be made to reduce her mortgage debt. When the court ordered the referee to pay a sum applicable to the reduction of the mortgage debt before the payment of costs and allowances, he clearly did not intend to change the order of priority as fixed by the law, and to order that, if the proceeds of the sale should be less than the costs and allowances, the prior payment should be applied in reduction of the debt.

The defendant's attorney in this case has himself taken the position that this payment to Morrison was part of the costs and allowances,

and included it in his concession that the sum of $476 was paid for costs and allowances in the case. The true construction of this judgment, I think, is that the court merely directed the referee to make payments in the manner set forth in order, so far as was practical, to protect the rights of all claimants. This direction was binding only so far as concerned the rights of the parties to payments from the referee directly; it was not, however, binding upon the parties as between themselves in regard to the application of these payments, and especially it was not binding upon the plaintiffs, whose claim was not dependent upon the determination of any issue in the action, but rested only upon an agreement of the parties.

Judgment should be reversed, with $30 costs, and judgment directed for the plaintiffs for the sum of $340, with interest from October 1, 1913, and costs. All concur.